NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250095-U

NO. 4-25-0095

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRANDON D. SPAETH, | ) | No. 24CF352 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's order denying defendant pretrial release, finding the State proved by clear and convincing evidence there was no less restrictive means of protecting the victim or the community from the safety threat posed by defendant.

¶ 2    Defendant, Brandon D. Spaeth, appeals the trial court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. In accordance with Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), defendant relies upon his motion for relief filed in the trial court as his argument on appeal. In his motion, defendant did not dispute that he was charged with a detainable offense and posed a real and present safety threat to any person or the community. Instead, he disputed the trial court's decision that there was no condition or combination of

conditions that would mitigate any threat he posed. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On December 31, 2024, defendant was charged by information with three offenses based upon an incident that occurred the day before, when defendant's wife, N.S., called 911 seeking assistance while the couple and their two small children were stopped at a gas station. Count I charged defendant with domestic battery (a Class 2 felony), stating defendant had five prior convictions for domestic battery under the law of another jurisdiction and he knowingly caused bodily harm to his wife by striking her in the face multiple times (720 ILCS 5/12-3.2(a)(1), (b) (West 2022)). Count II alleged defendant committed the offense of resisting a peace officer by knowingly resisting Sergeant Markus Armstrong, who was engaged in the execution of his official duties, by pulling away from the officer while being detained (*id.* § 31-1(a)). Count III alleged defendant obstructed a peace officer by knowingly obstructing Officer Ian Shoop, who was engaged in the execution of his official duties as an officer at the Livingston County jail, by not following the officer's commands (*id.* § 31-1(a)).

¶ 5        On the same day, the State filed a verified petition to detain defendant, alleging he was charged with a detainable offense and that his pretrial release posed a real and present threat to the safety of any person or the community based upon the specific articulable facts of the case. A hearing was held on the petition.

¶ 6        The State proffered the following information about the alleged incident. On December 30, 2024, at approximately 6:30 p.m., in Pontiac, Illinois, police were dispatched to a gas station after N.S. called 911 requesting assistance because her husband, defendant, was intoxicated and had been striking her in the face. Sergeant Armstrong arrived on scene and observed defendant standing near the passenger side of a van. Defendant was striking the window

- 2 -

with his hand and attempting to open the door. N.S. was seated in the driver's seat of the van and was visibly upset. The couple's two minor children, ages five and four, were in the back seat. Sergeant Armstrong observed defendant had blood and gravel on the left side of his face and around his nose and mouth.

¶ 7 Sergeant Armstrong asked defendant to walk toward him, but defendant appeared to not hear the command. Sergeant Armstrong walked closer and again asked defendant to walk toward him. Defendant began approaching the officer, and at some point, the officer "advised [defendant] to stop walking." Defendant ignored the commands and continued to walk. Another officer who had arrived at the scene attempted to tase defendant but did not make contact. Defendant turned to approach that officer. Sergeant Armstrong grabbed defendant and attempted to place defendant's hands behind his back. Defendant pulled away, and the officers eventually took him to the ground and handcuffed him.

¶ 8 Officers then spoke with N.S., who explained that they had driven to St. Louis, Missouri, for the day, and when they left, defendant began drinking a bottle of Captain Morgan, which was found to be half empty on the passenger side floorboard. N.S. told the officers that approximately 20 minutes prior to exiting the highway, "defendant became enraged and began striking her in the face with a closed fist." She said defendant hit her several times, and it was painful and hindered her ability to drive the van. N.S. stated defendant had "battered her several times in the past," which caused her to fear for herself and her children. N.S. exited the highway with the intention of finding a gas station, "attempting to get somewhere where somebody could help them" because she was scared. When she realized the gas station she stopped at was closed, N.S. asked defendant to get into the back of the van. When defendant exited the van, N.S. quickly locked the doors and called 911. Defendant's face was injured when he fell as N.S. attempted to

drive away at one point.

¶ 9        Officers observed defendant was "very intoxicated" and "very combatant." Defendant was seen at a hospital and cleared to be taken to jail. At the jail, defendant refused to exit the police car and "threatened bodily harm to jail staff." Defendant had to be physically removed from the vehicle with the assistance of additional officers. Defendant's handcuffs were removed, and he was instructed to place his hands on the wall. Defendant refused to comply despite repeated commands. Officer Shoop activated his Taser and advised defendant several times that he would be tased if he did not cooperate. Defendant failed to cooperate, and he was tased so the officers could take him into the jail.

¶ 10        A pretrial services investigation report (PSI) was submitted to the trial court. The PSI revealed defendant is a resident of West Bend, Wisconsin. Defendant reported that he works part-time at a feed store and "receives 'service connected' [benefits] at 80% due to a disability received while in the military." Defendant reported he had no history of substance abuse, though he "has had an issue with alcohol in the past and he is interested in treatment." Defendant's sister advised he had "started drinking heavily again recently and needs treatment." Defendant stated he was diagnosed with posttraumatic stress disorder (PTSD) and takes medication for the condition. Defendant scored a level 4 out of a possible 14 on the Virginia Pretrial Risk Assessment Instrument—Revised (VPRAI-R). Defendant was assessed an 8 out of 13 on the Ontario Domestic Assault Risk Assessment (ODARA), which indicates a 74% likelihood of recidivism within five years. The PSI revealed, since 2005, defendant had an extensive criminal history in Wisconsin, including six domestic abuse convictions, six operating a vehicle while intoxicated convictions, three convictions each for bail jumping and resisting or obstructing an officer, as well as convictions for disorderly conduct, hit and run, battery, and victim intimidation.

¶ 11　　　　　The State proffered further that the Office of Statewide Pretrial Services (OSPS) is a "two-man unit here in Livingston County that supervises roughly between 70 and a hundred clients." The State indicated OSPS sees clients as ordered by the trial court, which could be weekly, biweekly, or monthly. These meetings are preferred to be in person but can also be phone check-ins. Although there would be individual follow up with clients who missed meetings, OSPS would not file a violation with the court until "after several missed meetings." The State proffered OSPS also has the ability to do GPS monitoring, track clients and set parameters for where they can go, and use Secure Continuous Remote Alcohol Monitor (SCRAM) technology to monitor alcohol consumption. The State argued:

> "Other than SCRAM and GPS, they don't have *** other means available to them that is not basically self-reporting. If the Court were to order no contact, the only way that they could ensure, that they would know if there was a violation, [would be] if the defendant reported having contact with that individual."

The State explained OSPS does not do home visits, especially in this case, where a defendant lives out of state. Therefore, the State explained, "[T]heir ability to monitor is limited in regard to filing violations with the Court and, if necessary, [they] could notify law enforcement for help."

¶ 12　　　　　The trial court noted defendant's PSI indicated he had at least five prior convictions for domestic battery in Wisconsin and inquired as to whether the convictions involved the same victim. Defense counsel indicated they confirmed three of the prior convictions involved one victim, who was not the victim in this case.

¶ 13　　　　　Defense counsel proffered that defendant would agree to abide by all pretrial conditions, including reporting, monitoring, and testing by OSPS. Defense counsel noted OSPS could monitor social media and use GPS monitoring to restrict defendant's movement and monitor

his alcohol consumption via SCRAM.

¶ 14    In support of its petition to deny defendant pretrial release, the State argued it satisfied its burden of proving defendant committed a qualifying offense and posed a real and present threat to the safety of the victim and the community. The State argued further there were no conditions that could mitigate the threat posed by defendant in this case. The State pointed out defendant had a two-decade history of multiple violent offenses. Defendant was sentenced to probation numerous times, only to have it revoked due to noncompliance with the conditions, which was an indication of his likelihood of complying with court orders. The State noted that although defendant had indicated a willingness to refrain from contact with the victim in this case, "there's not an effective way to really monitor that and protect her at the same time." The State asserted GPS monitoring would only reveal defendant had violated the parameters in place after the fact and would not "mitigate the risk and dangerousness that he pose[d] to her." Although SCRAM may be appropriate, it "does not negate the dangerousness that [defendant] pose[d]," as shown by his extensive record of violent offenses.

¶ 15    In response, defense counsel argued defendant's criminal history shows that more recently, defendant had only had two disorderly conduct convictions and the "break in that, in his history, which I think speaks to the dangerousness. I think he was able to get his condition under control at some point." Further, defendant agreed to abide by any pretrial conditions, including no contact with his wife and children. Defense counsel noted defendant's sister indicated he had a problem with alcohol but argued, "[S]o, as far that condition is concerned, I think an order to abstain from alcohol, get tested, seek substance abuse treatment I think would alleviate the dangerousness here." Defense counsel asserted, as a veteran who has been diagnosed with PTSD, "if he's also ordered to maintain that medication and any counseling, evaluations that is concerned,

I think that would alleviate the risk as well."

¶ 16    The trial court determined the proof was evident and presumption great that defendant committed the qualifying offense and that he posed a real and present threat to the safety of the victim and the community as a whole in this case. The court further found there were no conditions of pretrial release that could mitigate the safety threat he posed. The court noted defendant's extensive criminal history, including five convictions for the same type of offense, and his numerous failures to comply with the conditions of supervision. The court noted the only conditions it might impose are

> "all conditions that certainly won't prevent him from getting drunk and getting violent, they just—well, I can order him not to do these things with a number of conditions; but I have zero evidence or zero proof that he's actually going to comply with that. In fact, the history I have for this particular defendant is that he's not going to comply with those things."

Defendant filed a Rule 604(h)(2) motion for relief. In his motion, defendant did not dispute that he was charged with a detainable offense and posed a real and present safety threat to any person or the community. Instead, he disputed the trial court's decision that there was no condition or combination of conditions that would mitigate any threat he posed. Defendant argued conditions such as participating in substance abuse treatment, undergoing treatment for PTSD, keeping away from the victim, wearing a GPS monitor, and reporting as required would alleviate any danger.

¶ 17    A hearing was held on defendant's motion. The trial judge stated she did not hear the original petition, but she reviewed the transcripts of the hearing and the PSI. The trial court denied defendant's motion, finding the proper standard was applied and the decision was supported by the evidence.

¶ 18        This appeal followed.

¶ 19                    II. ANALYSIS

¶ 20        Under the Code, it is presumed that all criminal defendants are entitled to pretrial release on personal recognizance, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). The State may petition to overcome this presumption for a defendant charged with a detainable offense as enumerated in the statute. *Id.* § 110-6.1(a). The Code provisions applicable in this case required the State to prove by clear and convincing evidence (1) defendant's release would pose "a real and present threat to the safety of any person or person or the community, based on the specific articulable facts of the case," and (2) no condition or combination of conditions would mitigate that safety threat. *Id.* §§ 110-2(b), 110-6.1(a)(1), (e)(3)(i). A finding of dangerousness alone does not automatically warrant pretrial detention. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 (finding pretrial detention requires more than a detainable offense and a threat to public safety). "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Id.* ¶ 15. "[W]hen the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 21        As previously stated, defendant does not contest the trial court's findings that he was charged with a detainable offense and posed a real and present safety threat to others. Rather, he asserts the State failed to prove by clear and convincing evidence that there was not a less

restrictive condition or combination of conditions that would mitigate the threat. Specifically, defendant argues the State's reliance on the charged conduct itself and defendant's prior record was insufficient to overcome the presumption of pretrial release. Pointing to his score of 4 out of 14 on the VPRAI-R, the fact that he is a veteran and is managing a PTSD diagnosis, and the fact that he expressed willingness to abide by any pretrial conditions the court deemed appropriate, defendant asserted there were numerous conditions that would alleviate any danger he posed.

¶ 22        After our *de novo* review of the record, we conclude the State proved by clear and convincing evidence there existed no condition or combination of conditions that would mitigate the threat defendant posed to the victim or the community based on the specific articulable facts in this case. Defendant was charged with domestic battery for allegedly striking his wife in the face with a closed fist multiple times while she was driving their van on a highway with their two young children in the back seat. The victim told police defendant "had battered her several times in the past" and she was afraid for herself and their children. Defendant's ODARA score (8 out of a possible 13) indicates a high likelihood of committing domestic violence again. In fact, the record reveals defendant has a significant criminal history that includes six prior convictions in Wisconsin, where he resides, involving domestic abuse (five disorderly conduct convictions and one battery conviction). Three of those convictions involved a different victim, and it is unknown whether either of the other two involved the victim in this case or someone else. Significantly, the PSI indicated defendant was convicted of intimidation of a witness/dissuading reporting in conjunction with one of the prior domestic abuse convictions. Defendant also has three convictions for bail jumping, and on four occasions, defendant's probation was revoked due to a violation of the terms and he was resentenced. Furthermore, defendant was convicted of five other disorderly conduct charges, three resisting or obstructing an officer charges, and a battery charge. Defendant

was convicted of operating a vehicle while intoxicated six times and operating under the influence once, and one of those cases included a conviction for hit and run. Not only does defendant's extensive criminal history reveal numerous crimes involving domestic violence and combative encounters with the police or others, it also demonstrates a persistent and alarming disregard for the law.

¶ 23    We are unpersuaded by defendant's argument there are conditions, such as GPS monitoring, substance abuse treatment, or a no-contact order, that would be sufficient to mitigate the safety threat he poses to his wife and the community. Defendant's multiple convictions for domestic abuse offenses are extremely problematic and, coupled with his conduct in this case, demonstrate a continued and significant safety risk to the victim that would not be sufficiently mitigated by any of the potential conditions of release. Although defendant expressed his willingness to abide by any conditions imposed upon him, the record on appeal belies that claim. Defendant refused to comply with police when he was approached at the scene and again refused to comply when they arrived at the police station. The record shows this has happened numerous times in the past when defendant has encountered law enforcement. Defendant has repeatedly defied court orders, law enforcement commands, and the law in the past to such an extent that there is nothing to suggest he will now suddenly change his behavior and comply with any court-imposed conditions. We therefore conclude that based on the specific facts of the case and defendant's individual background and characteristics, there is no condition or combination of conditions that would mitigate the threat posed by defendant. We affirm the trial court's decision.

¶ 24                                III. CONCLUSION

¶ 25    For the reasons stated, we affirm the trial court's judgment.

¶ 26    Affirmed.